IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DONALD E. GREISHAW, )
          Plaintiff, )
          v. ) Civil Action No. 06-184 Erie
BASE MANUFACTURING, )
STEVE SOUTH, an individual, and )
B. HARRY STRACK, JR., an individual, )
          Defendants. )

## MEMORANDUM OPINION

McLAUGHLIN, SEAN J., J.

    Plaintiff, Donald E. Greishaw, has filed suit against Defendant Base Manufacturing, its President, Steve South and Vice-President, B. Harry Strack, Jr., seeking to recover sales commissions and/or compensation allegedly earned during his previous employment with Base. Presently pending before the Court is Defendants' Motion for Summary Judgment.

### I. BACKGROUND

    Base is a manufacturer of industrial shelving located in Monroe, Georgia. See Second Amended Complaint ¶ 2. Plaintiff, a resident of Pennsylvania, was hired by Base on December 19, 2002 as an "outside" salesperson. Id. at ¶ 9. Plaintiff testified that most of his work was accomplished over the telephone, and that he spent most of his days in his "home office" handling phone calls and talking to prospective clients from approximately 8:00 a.m. until 5:00 p.m. Def. Ex. B, Greishaw Dep. p. 19. He also spent time in the field however, traveling and meeting with customers regarding their needs and projects. Id.

    When Plaintiff was initially hired, Defendant South orally agreed to pay Plaintiff a $40,000.00 annual salary and 1.5% commission on gross sales. Def. Ex. B, Greishaw Dep. p. 12; Def. Ex. K, South Dec. ¶ 7. On March 1, 2004, Plaintiff received an e-mail from Defendant Strack informing him that his compensation structure had been changed to a commission only basis, with a draw of $36,000.00 annually and commissions of 30% on gross profits of sales. Pl. Ex. F, Greishaw Dep. pp. 16-17; Def. Ex. F, Strack Dep. p. 6. Under this new structure, Plaintiff had no guaranteed minimum salary. Id.

    In either March 2004 or shortly thereafter, Base also began deducting expenses incurred

1

by Plaintiff as an offset against his commission. Pl. Ex. C, Strack Dep. pp. 6; 10. According to Defendants, Plaintiff's commission structure was further modified in August 2004 to reflect an increase in the cost of installation and outside purchases by 15% to account for overhead and profit. Pl. Ex. C, Strack Dep. p. 10; Def. Ex. O, Strack Dec. ¶ 16. Plaintiff contends that he was unaware that any such deductions from gross profits had been made until the discovery phase of this lawsuit. Pl. Ex. A, Greishaw Aff. ¶ 7.

In April 2005, Base sent Plaintiff a commission check for $40,000.00. Pl. Ex. F, Greishaw Dep. p. 38. Defendant Strack sent the check because he believed that Plaintiff was owed "at least" that amount by Base at the time. Pl. Ex. C, Strack Dep. pp. 11-12. Shortly thereafter, Plaintiff had a telephone conversation with Defendant Strack regarding the amount of the check. Plaintiff recounted the following:

• • •

> Harry called me up. And he said – you know, asked how I was doing. Harry and I were friends. And we were joking around a little bit. And then he goes, what do you think of the check. And I said, that is very nice, thank you very much, I appreciate that. And he goes, you're welcome. And he said, what do you think of the size. And I go, that's very nice. And I said, it looks to me like it equates to about 5 percent of sales. And he says, yes, you can use that.

• • •

Def. Ex. B, Greishaw Dep. p. 43.[1] Defendants contend that subsequent to September 1, 2005, Plaintiff's performance began to deteriorate and as a result, he was terminated effective July 15, 2006. Def. Ex. D, South Dep. p. 14; Plaintiff's Second Amended Complaint ¶ 21.

Following notification of his termination, Plaintiff telephoned Gail Sliger, an employee of Base who worked in purchasing and accounts payable. Pl. Ex. F, Greishaw Dep. pp. 77-78; Def. Ex. I, Sliger Dep. p. 4. She informed him that his sales between October 1, 2005 and July 7, 2006 were over $6 million. Id. at p. 78. Sliger testified that she found the number on the

---

[1]The parties sharply dispute the import of this conversation. Plaintiff contends that Strack's comment relative to the "5 percent of sales" represented a misrepresentation upon which he relied to his detriment and/or a modification of the commission structure established on March 1, 2004. For reasons discussed more fully below, the Defendants dispute both of these legal contentions.

computer through trial and error, located under a screen entitled "sales, year to date." Pl. Ex. I, Sliger Dep. p. 6. Plaintiff subsequently contacted Donna Powell, Base's customer service and inside sales representative, and requested his sales figures. Pl. Ex. F, Greishaw Dep. p. 80. According to Plaintiff, Powell informed him that she was unable to access the data Sliger had previously accessed. Id. at p. 81. Defendants contend that Sliger's statement was demonstrably incorrect. Pl. Ex. B, South Dep. p. 38. According to Defendant Strack, the "year to date" sales information represented Plaintiff's entire cumulative sales with Base, and not his sales between November 1, 2005 and July 15, 2006. Def. Ex. O, Strack Dec. ¶ 8. Defendants claim that Plaintiff's sales were as follows:

|  |  |
|---|---|
| 1/1/03 - 10/31/03: | $1,144,995.84 |
| 11/1/03 - 10/31/04: | $2,070,368.49 |
| 11/1/04 - 10/31/05: | $ 756,998.78 |
| 11/1/05 - 10/31/06: | $2,232,965.31 |
| Grand Total: | $7,105,328.42 |

Def. Ex. E, p. 20. Moreover, Defendants contend that Sliger, by virtue of her position as an accounts payable clerk, was not authorized to speak on behalf of the company on matters relative to employee compensation. See Hearing on Motions Tr. pp. 3; 16-18 [Doc. No. 68].

Based on Sliger's representation, Plaintiff claims he has raised a triable issue of fact as to whether he is entitled to commissions on over $6 million between October 1, 2005 and July 7, 2006. He also contends that there are other examples of underpayment including $388,907.46 in additional sales for two companies, Perkins and Marmaxx (Pl. Ex. H), underpayment of commissions in the amount of $12,328.74 for the period January 2003 through February 2004 (Pl. Ex. E), as well as a failure to have credited him with various sales where he was not directly involved in the sale, despite alleged representations by Defendant it would do so. Pl. Ex. A, Greishaw Aff. ¶ 18; Pl. Ex. H; Pl. Ex. J, Powell Dep. p. 15. Defendants deny that Plaintiff is due any commissions and has counterclaimed against him in the amount of $45,900.47 representing draws allegedly in excess of commissions earned. Def. Ex. O, Strack Dec. ¶ 12.

Plaintiff has filed suit alleging violations of the Pennsylvania Wage Payment and Collections Law ("WPCL"), 43 P.S. § 260 (Count I); wrongful termination (Count II); fraud

3

(Count III); violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203(e)(1) (Count IV); and violations of the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.103(h) (Count V). As indicated, presently pending before the Court is Defendants' motion for summary judgment on Counts I through IV [Doc. No. 49].[2]

## II. STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In order to withstand a motion for summary judgment, the non-moving party must "make a showing sufficient to establish the existence of [each] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In evaluating whether the non-moving party has established each necessary element, the Court must grant all reasonable inferences from the evidence to the non-moving party. Knabe v. Boury Corp., 114 F.3d 407, 410, n.4 (3d Cir. 1997) (citing Matsuchita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986)). "Where the record taken as a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. (quoting Matsushita, 475 U.S. at 587).

## III. DISCUSSION

### A.     WPCL (Count I)

The WPCL requires an employer to promptly pay wages, fringe benefits and wage supplements to its employees. 43 Pa.S.A. § 260.2a. Having carefully reviewed the record submitted in support of and in opposition to Defendants' motion for summary judgment relative to Count I, we are of the opinion that there are material issues of fact that render summary

---

[2]At oral argument on the pending motions, we denied Defendants' motion to dismiss [Doc. No. 37] Plaintiff's wrongful discharge claim (Count II) without prejudice and granted Plaintiff's motion to amend the complaint to include counts for alleged violations of the Fair Labor Standards Act (Count IV) and the Pennsylvania Minimum Wage Act (Count V) [Doc. No. 43]. See Hearing Tr. pp. 2; 26. Defendants have not moved for summary judgment on Count V.

4

judgment inappropriate. For example, Plaintiff has submitted Exhibit H (sales and billing summaries) which purports to reflect that Defendants failed to credit him for $388,907.46 in sales to Perkins and Marmaxx, and has also submitted an exhibit reflecting an alleged underpayment of $12,328.74 for the period from January 2003 through February 2004. Pl. Ex. E. In addition, as previously discussed, Plaintiff claims entitlement to commissions on certain sales based on alleged representations made by South and deposition testimony of Powell. Pl. Ex. A, Greishaw Aff. ¶ 18; Pl. Ex. H; Pl. Ex. J, Powell Dep. p. 15.

That said, we address briefly Plaintiff's contention that there is a triable issue of fact as to whether he, in fact, generated sales in excess of $6 million between October 1, 2005 and July 7, 2006. In this regard, Defendants have submitted uncontradicted evidence that Sliger's representation was inaccurate. For instance, Defendants produced evidence that when the computer system was accessed in January 2007, it showed inaccurate "year to date" sales numbers for former salesmen who had not even been employed during the period of time for which the system purported to reflect their "year to date" sales. Def. Ex. P. Base's computer system contained a program designed to automatically collect sales data by salesman. Def. Ex. O, Strack Dec. ¶ 8. The "sales by salesman" screen however, was an unused feature of the computer program, which was designed to be manually reset at the beginning of each fiscal year to record "year to date" sales. Id. Because Base never used the feature, it was never reset, and although the data screen appeared to give "year to date" sales by salesman, the number actually reflected all sales since the system was implemented. Id.

Plaintiff conceded at oral argument that Sliger's statement was his only source as to the amount of sales between October 1, 2005 and July 7, 2006. See Hearing Tr. p. 32. He further conceded that he had no documents in his possession that independently substantiated his contention that he generated over $6 million in sales for that period of time. Id. at p. 34. In short, Plaintiff has failed to raise a triable issue of fact as to this distinct aspect of his claim.

This claim fails, however, on an independent basis. Defendants argue that Sliger was an accounts payable clerk and was not authorized to speak on behalf of the company concerning matters related to commissions of sales persons. See Hearing Tr. pp. 16-18. Federal Rule of

Evidence 801(d)(2)(D) provides that "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship" represents an exception to the hearsay rule. In order for such a statement to be admissible, however, "it is necessary that the content of the declarant's statement concern the scope of her agency." Loncosky v. Wal-Mart Stores, Inc., 1997 WL 732465 at *3 (E.D.Pa. 1997), citing Hill v. Spiegel, Inc., 708 F.2d 233, 237 (6th Cir. 1983). The appropriate focus is whether the speaker was in fact authorized to act for his or her employer concerning the matter about which the employee spoke. Wilkinson v. Carnival Cruise Lines, Inc., 920 F.2d 1560, 1566 (11th Cir. 1991).; see also Nichols v. Bennett Detective & Protective Agency, Inc., 245 Fed. Appx. 224, 228 (3rd Cir. 2007) (statements made by employee did not concern matters within the scope of employee's employment and were therefore inadmissible); Kraemer v. Franklin and Marshall College, 1995 WL 681108 at *2 (E.D.Pa. 1995) (employee's statement not an admission since it was not made concerning a matter within the scope of his employment).

Here, the evidence conclusively established that Sliger's statement to Plaintiff concerned a matter that was not within the scope of her agency. Sliger worked in purchasing and accounts payable with no responsibility for personnel or compensation issues. Her statement therefore, could not, as a matter of law, bind Defendant.

We now turn to address Plaintiff's contention that Strack's comment "you can use that," in response to Plaintiff's observation that his commission check looked "like it equat[ed] to about 5 percent of sales" represented a modification of the preexisting oral contract.

A modification to a contract must satisfy the basic criteria essential for a valid contract. Kreutzer v. Monterey County Herald Co., 747 A.2d 358, 606-07 (Pa. 2000) ("It is hornbook law that a contract, either oral or written, may be modified by a subsequent agreement which is supported by legally sufficient consideration or a substitute therefor and meets the indicia of contract formation."). Under Pennsylvania law, to form an enforceable contract, there must be an offer, acceptance and consideration. Reed v. Pittsburgh Bd. of Public Education, 862 A.2d 131, 134 (Pa. Commw. Ct. 2004) ("It is axiomatic that, to form a contract, there must be an offer, acceptance, and consideration."); Jenkins v. County of Schuylkill, 658 A.2d 380, 383 (Pa.

Super.), appeal denied 666 A.2d 1056 (Pa. 1995). The offer and acceptance must include the essential terms that both parties intend to be binding. In re Estate of Hall, 731 A.2d 617, 621 (Pa. 1999). The "test for enforceability of an agreement is whether both parties have manifested an intention to be bound by its terms and whether the terms are sufficiently definite to be specifically enforced." Channel Home Centers, Division of Grace Retail Corp. v. Grossman, 795 F.2d 291, 298-99 (3rd Cir. 1986) (applying Pennsylvania law); see also Peck v. Delaware County Board of Prison Inspectors, 814 A.2d 185, 191 (Pa. 2002). The party asserting modification bears the burden of proof on the issue. Nernberg & Laffey v. Patterson, 601 A.2d 1237, 1239-40 (Pa. Super. Ct. 1991).

Here, we find that Plaintiff has failed to present evidence that would permit a reasonable factfinder to conclude that Strack's comment that "yes, you can use that" represented an expression of assent to a significant modification of the prior agreement. We conclude however, from an evidentiary standpoint, that the jury may consider (and accept or reject) Strack's statement as an admission by a party opponent as to one method of calculating commission due on 30% of profits. Indeed, in their Brief, Defendants state that Strack's comment "at most can be interpreted as an admission that it could serve as a rough proxy or rule of thumb for estimating 30% of profits." See Defendant' Brief, p. 20.[3]

### B.   *Wrongful discharge (Count II)*

Plaintiff claims that his termination for complaining about Defendants alleged failure to comply with the WPCL represented a violation of public policy sufficient to support a wrongful discharge claim under Pennsylvania law. It is undisputed that Pennsylvania law generally does not recognize a common law cause of action for the wrongful discharge of an at-will employee. Geary v. United States Steel Corp., 319 A.2d 174 (Pa. 1974). In limited circumstances however, exceptions have been recognized where discharge of an at-will employee threatens or violates a clear mandate of public policy. McLaughlin v. Gastrointestinal Specialists, Inc., 750 A.2d 283,

---

[3]Given our disposition of Defendants' motion for summary judgment relative to Count I, we also deny Defendants' motion for summary judgment relative to its counterclaim.

7

287 (Pa. 2000) ("An employee will be entitled to bring a cause of action for a termination of that relationship only in the most limited of circumstances where the termination implicates a clear mandate of public policy in this Commonwealth."). A "clear mandate" of public policy must be of a type that "strikes at the heart of a citizen's social right, duties and responsibilities." Novosel v. Nationwide Ins. Co., 721 F.2d 894, 899 (3rd Cir. 1983).

Courts have identified a number of situations where an employee has been terminated in violation of public policy and thus given rise to a cause of action for wrongful discharge. See Shick v. Shirey, 716 A.2d 1231 (Pa. 1998) (plaintiff discharged for filing workers' compensation claim); Rothrock v. Rothrock Motor Sales, Inc., 883 A.2d 511 (Pa. 2005) (extending Shick to situation where employee fired for refusing to dissuade a subordinate employee from pursuing a workers' compensation claim); Highhouse v. Avery Transp., 660 A.2d 1374 (Pa. Super. Ct. 1995) (plaintiff fired for filing unemployment compensation claim); Kroen v. Bedway Security Agency, 633 A.2d 628 (Pa. Super. Ct. 1993) (plaintiff fired for refusing to take polygraph test when employer's use of such test was forbidden by statute); Reuther v. Fowler & Williams, Inc., 386 A.2d 119 (Pa. Super. Ct. 1978) (plaintiff dismissed for complying with jury duty obligation); Woodson v. AMF Leisureland Ctrs., Inc., 842 F.2d 699 (3rd Cir. 1988) (plaintiff fired for refusing to unlawfully serve alcohol to intoxicated customer).

Here, Defendants argue that none of Pennsylvania's recognized narrow public policy exceptions are present in this case and more fundamentally, courts have explicitly rejected wrongful termination claims by employees who sought payment pursuant to the WPCL. See Booth v. McDonnell Douglas Truck Servs., Inc., 585 A.2d 24 (Pa. Super. Ct.), appeal denied, 597 A.2d 1150 (Pa. 1991); Janis v. La-Z-Boy Furniture Galleries, 2006 WL 7241587 (E.D.Pa. 2006). In Booth, an employee sought commissions from his employer, who disputed commissions were owed. The employee was ultimately terminated and subsequently filed a lawsuit claiming that he was wrongfully terminated in violation of public policy. The plaintiff claimed that his discharge as the result of a dispute over wages owed under the WPCL represented the type of public policy violation sufficient to support a wrongful termination claim. The Superior Court disagreed, noting:

8

> To adopt [plaintiff's] position would mean that any time an employee is discharged due to a dispute over compensation due him, the employer would be liable because it asserted its position. It is true that [plaintiff] has a right to attempt to enforce the contract as he sees it. It is just as true that [defendant] has [the] right to resist what it views to be overreaching by [plaintiff]. [Defendant] has another right: to discharge [plaintiff], an at-will employee, for no reason or any reason. We refuse to hold that an employer who exercises that right because of a dispute over compensation due the employee is liable for wrongful discharge.

Booth, 585 A.2d at 29; see also Janis, 2006 WL 7241587 at *8 (finding that employee's termination after complaining about not receiving sales commissions did not violate public policy).

Plaintiff argues that the Pennsylvania Supreme Court decisions of Shick v. Shirey, 716 A.2d 1231 (Pa. 1998) and Rothrock v. Rothrock Motor Sales, Inc., 883 A.2d 511 (Pa. 2005) lend support to his wrongful discharge claim. In Shick, the court held that an employee who was terminated for exercising his rights under the Workers' Compensation Act could pursue a wrongful discharge claim. Id. at 603. Similarly, in Rothrock v. Rothrock Motor Sales, Inc., 883 A.2d 511 (Pa. 2005), the court held that an employee had stated a cause of action for wrongful discharge when he was fired for refusing to dissuade a subordinate employee from pursuing a workers' compensation claim. Id. at 517.

We conclude that on this record, Plaintiff has not asserted a viable wrongful discharge claim. Actions pursuant to the WPCL are distinguishable from those involving the Workers' Compensation Act. The Workers' Compensation Act is the *exclusive* means for obtaining compensation for injuries abrogating common law tort actions. Shick, 716 A.2d at 1237. As the court observed in Carlson v. Community Ambulance Services, Inc., 824 A.2d 1228, 1233 (Pa. Super. Ct. 2003):

> The appellant in *Shick* was faced with a Hobson's choice of filing a claim and being terminated, or filing no claim and not being compensated. Under the Workers' Compensation Act, he would never have been able to seek redress in the courts.

Carlson, 824 A.2d at 1233. No such dilemma exists for an employee under the WPCL since it is not the exclusive means for securing compensation allegedly due an employee. Bayer v. Pottsville Area Emergency Medical Services, Inc., 758 A.2d 1265, 1270 n.1 (Pa. Super. Ct.

9

2000) (WPCL is not the exclusive remedy for an individual seeking to recover wages and other benefits from an employer); Todora v. Jones & Laughlin Steel Corp., 450 A.2d 647, 649-650 (Pa. Super. Ct. 1982) (same); see also McGrath v. CCC Information Services, Inc., 731 N.E.2d 384, 392 (Ill. App. Ct. 2000) (actions pursuant to Illinois' Wage Payment and Collection Act are distinguished from workers's compensation actions by the fact that the Wage Payment and Collection Act provides a non-exclusive remedy for employees asserting wage claims; finding no public policy exception for retaliatory discharge).

We agree with the rationale of the court in Greto v. Radix Systems, 1994 WL 719646 (E.D.Pa. 1994), wherein the court concluded that a wrongful termination claim would not lie based upon a dispute for a claim arising under the WPCL. The Greto court observed:

> Courts that allow claims for retaliatory discharge for filing workers compensation claims do so because of the special "humanitarian" nature of the Worker's Compensation Act. *Burns v. United Parcel Service, Inc.*, 757 F. Supp. 518 (E.D.Pa. 1991). The court in *Burns* reasoned that such retaliatory discharges fall within the narrow public policy exception because the "legislature recognized that employers could use their superior bargaining position to prevent injured employees from receiving benefits provided by the Worker's Compensation Act and they express a clear legislative policy in favor of protecting employees from those efforts." *Id.* at 522. Without clear indication from the Pennsylvania courts or legislature that they intend to expand the public policy exception, this court will not do so.

Greto, 1994 WL 719646 at *3 (citation omitted).

The Pennsylvania Supreme Court has "steadfastly resisted any attempt to weaken the presumption of at-will employment," McLaughlin, 750 A.2d at 290, and for the reasons discussed above, we too decline to expand a public policy exception to the at-will doctrine under these facts. Summary judgment is therefore granted as to Count II of Plaintiff's Second Amended Complaint.

### C.    *Fraud (Count III)*

Plaintiff's fraud claim is based upon his contention that Defendants induced him to continue to labor under the false impression that his compensation from March 2004 forward equated to 5% of his sales, when they knowingly never had any intention of paying him such a commission. In Pennsylvania, fraud requires the showing of five elements: (1) a

10

misrepresentation; (2) a fraudulent utterance thereof; (3) an intention by the maker that the recipient will thereby be induced to act; (4) justifiable reliance by the recipient upon the misrepresentation; and (5) damage to the recipient as the proximate result. Scaife Co. V. Rockwell Standard Corp., 285 A.2d 451, 454 (Pa. 1971), cert. denied, 407 U.S. 920 (1972); Delahanty v. First Penn. Bank, 464 A.2d 1243, 1252 (Pa. Super. Ct. 1983). Moreover, each element must be proved by "evidence that is clear, precise, and convincing." Delahanty, 464 A.2d at 1252 (internal citations omitted).

Plaintiff's only contention is that he relied to his detriment on Strack's representation by failing to seek alternative employment. See Plaintiff's Brief in Opposition p. 22; Hearing Tr. p. 44. He does not claim nor does he offer any evidence that he turned down other job offers in reliance on Strack's representation. Merely refraining from seeking alternative employment is insufficient detriment to support a fraud claim. Engstrom v. John Nuveen & Company, Inc., 668 F. Supp. 953, 963 (E.D.Pa. 1987) (remaining with an employer who promised excellent salary, bonuses and promotions, without evidence that plaintiff refused offers of comparable work cannot constitute sufficient financial detriment); Auerbach v. Kantor-Curley Pediatric Assoc., 2004 WL 870702 at *7-8 (E.D.Pa. 2004) (finding injuries alleged by plaintiff merely speculative; plaintiff presented no evidence of lost job opportunities in reliance on alleged misrepresentation); Yerger v. Landis Mfg. Sys., Inc., 1989 WL 66443 at *6 (E.D.Pa. 1989) ("A jury cannot be allowed to speculate on whether there were available to plaintiff other suitable employment opportunities, whether he would have obtained some unidentified position, and, if so, how much he would have been paid."), aff'd without opinion, 924 F.2d 1050 (3rd Cir. 1990). Summary judgment is granted, therefore, with respect to Count III.

### D. *FLSA (Count IV)*

In his Second Amended Complaint, Plaintiff seeks minimum hourly wages for approximately half of the work weeks from March 1, 2004 through the date of his termination in which he did not earn a commission. Defendants seek summary judgment on this claim arguing that as an outside salesperson, Plaintiff was exempt from the FLSA's minimum wage requirement. The FLSA generally requires covered employers to pay employees at least the

11

federal minimum wage for all hours worked, as well as overtime pay of time-and-one-half the regular rate for all hours worked over 40 in a single workweek. 29 U.S.C. §§ 206, 207. The FLSA exempts, however, "any employee employed ... in the capacity of outside salesman." 29 U.S.C. § 213(a)(1). The exemptions are to be "narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit." Martin v. Cooper Electric Supply Co., 940 F.2d 896, 900 (3rd Cir. 1991), cert. denied, 503 U.S. 936 (1992). The employer bears the burden of establishing that its employees come within the scope of the exemption. Davis v. Mountaire Farms, Inc., 453 F.3d 554, 556 (3rd Cir. 2006).

The Department of Labor (pursuant to Congress' specific grant of rule-making authority) has issued implementing regulations, found at 29 C.F.R. part 541, defining the scope of the exemption. Part 541 was amended effective August 23, 2004, see Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed.Reg. 22122 (April 23, 2004), and because Plaintiff is seeking wages from March 2004 through July 15, 2006, both the old and new regulations apply to his claim. Davis, 453 F.3d at 557 n.2; McLain v. McDonald's Corp., 2007 WL 210440 at *8 n.17 (E.D.Pa. 2007).

Prior to August 23, 2004, the implementing regulations defined an "outside salesman" as a person (1) "[w]ho is employed for the purpose of and who is customarily and regularly engaged away from his employer's place or places of business" in making sales; and (2) who does not devote more than 20% of time to activities performed by nonexempt employees, provided that work performed incidental to and in conjunction with the employee's own outside sales or solicitations, including incidental deliveries and collections, shall not be regarded as nonexempt work. 29 C.F.R. § 541.5 (1993).

The new regulations, which apply to Plaintiff's claim for work performed from August 23, 2004 to July 15, 2006, define the outside salesman exception as any employee: (1) whose primary duty is making sales and (2) "[w]ho is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty." 29 C.F.R. § 541.500(a). In determining the "primary duty" of an outside sales employee:

> [W]ork performed incidental to and in conjunction with the employee's own outside sales or solicitations, including incidental deliveries and collections, shall be regarded as exempt outside sales work. Other work that furthers the employee's sales efforts also shall be regarded as exempt work including, for example, writing sales reports, updating or revising the employee's sales or display catalogue, planning itineraries and attending sales conferences.

29 C.F.R. § 541.500(b). The regulations further provide that an outside sales employee must be customarily and regularly engaged away from the employer's place of business:

> ... The outside sales employee is an employee who makes sales at the customer's place of business or, if selling door-to-door, at the customer's home. Outside sales does not include sales made by mail, telephone or the Internet unless such contact is used merely as an adjunct to personal calls. Thus, any fixed site, whether home or office, used by a salesperson as a headquarters or for telephonic solicitation of sales is considered one of the employer's places of business, even though the employer is not in any formal sense the owner or tenant of the property. ...

29 C.F.R. § 541.502.

Here, we find that material issues of fact remain as to whether the Plaintiff is an "exempt" employee. Accordingly, Defendants' motion for summary judgment as to this Count is denied.[4]

## IV. CONCLUSION

An appropriate order follows.

---

[4] The Court has also considered Defendants' Motion to Strike Paragraphs 7, 17, 19, 22, 26 and 36 of the Affidavit of Don Greishaw and Exhibits E and H submitted in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment [Doc. 58], as well as Plaintiff's Brief in Opposition thereto [Doc. No. 61], and Defendants' motion is denied.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONALD E. GREISHAW, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-184 Erie |
| ) | |
| BASE MANUFACTURING, ) | |
| STEVE SOUTH, an individual, and ) | |
| B. HARRY STRACK, JR., an individual, ) | |
| ) | |
| ) | |
| Defendants. ) | |

**ORDER**

AND NOW, this 21st day of February, 2008, and for the reasons stated in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment [Doc. No. 49] is GRANTED in part and DENIED in part; the Motion is DENIED as to Counts I and IV, and GRANTED as to Counts II and III.

IT IS FURTHER ORDERED that Defendants' motion with respect to its counterclaim is DENIED.

IT IS FURTHER ORDERED that Defendants' Motion to Strike Paragraphs 7, 17, 19, 22, 26 and 36 of the Affidavit of Don Greishaw and Exhibits E and H submitted in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment [Doc. 58] is DENIED.

                                                s/ Sean J. McLaughlin
                                                United States District Judge

cm: All parties of record.